A99A1038. AL-MADINAH PETROLEUM, INC. v. MANJEE et al.
(521 SE2d 681)

PHIPPS, Judge.

Al-Madinah Petroleum, Inc., filed this complaint for breach of contract against Ashwin Manjee and Golden Deer Corporation. Al-Madinah seeks a total recovery of $180,000 consisting of $1,000 monthly payments allegedly owed under two contracts. The first is

an agreement by Golden Deer to purchase a business owned by Al-Madinah but situated on premises owned by Phillips and leased to Al-Madinah; the second is an agreement between Al-Madinah, Golden Deer, and Manjee through which Al-Madinah assigned the lease to Golden Deer.

Manjee and Golden Deer claim that the purpose of the monthly payments was to ensure that Phillips received sums in addition to rent which the lease required Golden Deer to pay. Therefore, Manjee and Golden Deer maintain that their liability for the monthly payments terminated when the lease was canceled upon their acquisition of the underlying fee. Al-Madinah claims that the payments were consideration for Golden Deer's purchase of the business and survive termination of the lease under the terms of the lease assignment agreement.

Although a bench trial was conducted, no testimony was heard. Instead, various factual representations were made by the attorneys and documents were submitted for the court's consideration. In the event a contractual ambiguity was found to exist, the court agreed to consider additional evidence. See *Thomas v. American Global Ins. Co.*, 229 Ga. App. 107, 109 (2) (a) (493 SE2d 12) (1997) (parol evidence admissible to explain an ambiguity in a written contract).

The trial court entered judgment in favor of Manjee and Golden Deer after concluding that (1) the $1,000 payments called for under the lease assignment agreement were rent payments; and (2) there was no longer any obligation to make such payments because the lease terminated by operation of law when Manjee and Golden Deer became owners of the underlying fee. On appeal, Al-Madinah complains about the court's conclusions and entry of judgment without considering additional evidence.

In 1993, Al-Madinah bought a business known as Conoco Food Mart on premises owned by Phillips. Al-Madinah became assignee of a lease agreement which had been entered between Phillips and the original tenant in July 1986. The original term of the 1986 lease was from August 1, 1986, until December 31, 1996, but the lessee was granted a "successive option" to extend the lease for a period of ten years at the expiration of the initial term. From January 1, 1993, until December 31, 1996, rent was set at $1,800 monthly but was to escalate to $2,000 monthly from January 1, 1997, until December 31, 2006. Rental payments were due on the first of each month. The lease also obligated the lessee to pay various sums in addition to rent (e.g., utilities, repairs and maintenance, insurance, and taxes).

In September 1994, Golden Deer purchased the assets of Conoco from Al-Madinah pursuant to a buy/sell agreement. It was stated in the buy/sell agreement and closing statement that the purchase price for the business assets was $185,000, consisting of $100,000 to be

paid in cash at or before closing and an indebtedness of $85,000 under two promissory notes. Paragraph 19 of the buy/sell agreement, entitled "[l]easehold improvements," obligated Golden Deer to pay Al-Madinah "additional rent" in the amount of "$1,200.00 per month or the difference between $3,000.00 and the rent to be paid to the landlord, whichever is less." This additional rent was to "be paid by the 5th day of each month for the entire term of the lease including options if exercised." The buy/sell agreement also contained a number of contingencies. One required Golden Deer to obtain a lease or lease assignment upon the same terms and conditions as the existing lease.

In October 1994, Al-Madinah entered a lease assignment agreement with Golden Deer and Manjee, who was not a party to the buy/sell agreement. Because Manjee was not a United States citizen and had no green card, Phillips consented to the assignment only on the condition that Al-Madinah continue to be responsible for the obligations of the lessee. Under the lease assignment agreement, Golden Deer became assignee of the 1986 lease.

Paragraph one of the lease assignment agreement provides as follows:

> As consideration for the assignment of the Lease Agreement, Golden Deer and Manjee, jointly and severally, agree to pay Al-Madinah . . . upon the fifth of each calendar month and throughout the term of the Lease Agreement the sum of [$1,200] each month beginning the fifth day of October, 1994, and continuing through the fifth day of December, 1996 and shall pay the sum of [$1,000] each month beginning January 5, 1997 and continuing until December 5, 2006.

Although the lease assignment agreement prohibited Golden Deer from assigning, subletting, mortgaging, or encumbering the lease agreement or property without Al-Madinah's consent, it did not preclude Golden Deer from buying the property.

Golden Deer later sold Conoco and then, along with Manjee, purchased the underlying fee from Phillips's estate after Al-Madinah declined to exercise a right of first refusal it was granted under the original lease. While all of these transactions were under discussion, on December 19, 1997, Al-Madinah's attorney sent a letter to Manjee. This letter was in reference to "Lease with Al-Madinah . . . Dated October, 1994." The purpose of the letter was to notify Manjee that the "landlord" intended to give effect to the original strict terms of the lease, so that all future rental payments had to be received on or before the first of each month.

On December 31, Phillips's estate canceled the lease because of the sale of the property to Manjee and Golden Deer. Al-Madinah then brought this suit because of Manjee's and Golden Deer's refusal to pay the $1,000 monthly payments required under paragraph one of the lease assignment agreement, beginning with the payment that came due on January 5, 1998. By amendment to the complaint, Al-Madinah claimed that Manjee and Golden Deer had committed an anticipatory breach of the lease assignment agreement by taking the position that it was invalidated by cancellation of the lease, and it asserted a claim for the entire $108,000 in monthly payments that would become due through December 31, 2006.

Allegations in the complaint and statements by counsel at the bench trial show the following. Paragraph one of the lease assignment agreement was a mechanism through which joint and several liability was imposed on Manjee and Golden Deer for the $1,000 monthly payments Golden Deer was required to pay under paragraph 19 of the buy/sell agreement. The December 1997 letter from Al-Madinah's attorney to Manjee was a demand for these payments. *Held*:

Since paragraph 19 of the September 1994 buy/sell agreement and paragraph one of the October 1994 lease assignment agreement concern the same monthly payments to be made to Al-Madinah, these two paragraphs should be construed together. See OCGA § 24-6-3 (a); *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452, 453 (471 SE2d 537) (1996); *Manry v. Hendricks*, 66 Ga. App. 442, 453 (1) (18 SE2d 97) (1941). So construed, we interpret the two paragraphs to mean that Golden Deer and/or Manjee are only obligated to make the monthly payments until such time as the lease terminates, with the payments being either $1,200 or $1,000 depending upon whether the monthly rent is $1,800 or $2,000.

Moreover, under the first provision of paragraph one of the lease assignment agreement, Golden Deer and Manjee agree to pay "throughout the term of the Lease Agreement" the specified monthly sums. The second provision states the payment is to be $1,200 from October 1994 until December 1996, and then $1,000 from January 1997 until December 2006. To the extent there is an inconsistency between these provisions, the former provision (requiring payment to be made during the term of the lease) would control over the latter (requiring payment to be made until 2006). See *Holtzclaw v. City of Dalton*, 189 Ga. App. 650, 652 (377 SE2d 196) (1988) (a limited provision of a contract controls over one that is more broadly inclusive; further, the first of two contradictory contract clauses will prevail).

Therefore, the court did not err in entering judgment in favor of Manjee and Golden Deer without considering additional evidence. See *Hearn v. Old Dominion Freight Lines*, 172 Ga. App. 658, 659 (1)

(324 SE2d 517) (1984). The judgment is affirmed under the right for any reason rule. *Mine Chen v. Alexander Terry Assoc.*, 228 Ga. App. 345, 347 (491 SE2d 834) (1997).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 17, 1999.

*Higgins & Dubner, Michael W. Higgins*, for appellant.
*A. Joseph Nardone, Jr.*, for appellees.